**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-02729-CMA

JUDY JACQUEZ-RANSOM,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

## I.  OVERVIEW

      This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Judy Jacquez-Ransom challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for social security disability benefits.  The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  Plaintiff argues the ALJ committed two errors:

      (1)     The ALJ erred by failing to assess Plaintiff's major depression and irritable bowel syndrome as severe ailments; and

      (2)     The ALJ erred by failing to properly evaluate the opinions of Plaintiff's treating physicians.

(Doc. # 12 at 2.)

Plaintiff requests an order reversing and remanding the ALJ's decision for further consideration of how Plaintiff's impairments impact her ability to maintain employment. (Doc. # 14 at 2.)  The Court, after considering the parties' arguments, affirms the ALJ's decision.

## II.   FACTS

### A.   MEDICAL EVIDENCE

Plaintiff was born in January 1963 and was 42 years old at the onset of her alleged disability.  She has a high school education and is a licensed daycare provider. She alleges she became disabled on March 1, 2005, due to her disabling conditions, in particular, irritable bowel syndrome ("IBS"), depression, and panic attacks.  (Doc. # 8 at 57, 68, 72, 73, 78.)  The administrative record contains a detailed recitation of the medical evidence.  A recap of the most relevant evidence is set forth below.

In September 2004, Plaintiff presented to Thomas Johnson, D.O., a primary care physician, with complaints about severe diarrhea.  Dr. Johnson referred Plaintiff to Michelle Hor, M.D., a specialist, who ordered a colon biopsy.  Although Plaintiff's pre-colonoscopy physical examination was normal, Dr. Hor interpreted the biopsy as indicating changes consistent with microscopic colitis.  (*Id.* at 126-39, 273-74.)

In February 2005, Plaintiff was again examined by Dr. Johnson.  He noted that Plaintiff appeared healthy and that her affect was pleasant and appropriate. Dr. Johnson diagnosed Plaintiff with colitis and acute anxiety stress reaction.  He refilled

her Lomotil prescription and prescribed Asacol, Lexapro, and Clonazepam.  (*Id.* at 129-30.)

In March 2005, Plaintiff presented to Gary Klein, M.D., a primary care physician, with a history of abdominal pain and complaints of constant diarrhea, which Dr. Klein noted were "probably due to stress."  Dr. Klein diagnosed Plaintiff with IBS-diarrhea. (*Id.* at 216.)

On March 22, 2005, Plaintiff was evaluated by Charles Ruzkowski, M.D., a gastroenterologist, who noted that Plaintiff had microscopic colitis and had failed the Pepto-Bismol therapy.  He also noted that Plaintiff was going through a great deal of stress.  Dr. Ruzkowski prescribed Asacol to try to alleviate Plaintiff's gastrointestinal problems.  (*Id.* at 266-67.)

On March 31, 2005, Plaintiff presented to the emergency room at Penrose Community Hospital and was admitted with acute pancreatitis.  She underwent surgery on April 4 and April 5, 2005, during which her gall-bladder was removed.  Michael McCann, M.D., one of the surgeons, discharged Plaintiff on April 6, 2005, in good condition, and instructed her to follow up in one week.  (*Id.* at 156-59, 161-72, 264-65.)

On April 14, 2005, Plaintiff reported to Dr. McCann for her follow-up.  Dr. McCann observed that Plaintiff was recovering well and showed no signs of complication.  He released her to resume all normal activity.  (*Id.* at 223.)  On April 21, 2005, Dr. Ruzkowski noted that Plaintiff's surgery for her pancreatitis had gone very well, Plaintiff

reported no abdominal pain and indicated that she felt like a new women.  (*Id.* at 262-63.)

In a letter dated June 16, 2005, Dr. Ruzkowski noted that Plaintiff's diarrhea was well controlled with Asacol and that Plaintiff reported feeling great.  He added that Plaintiff's liver functions were basically normal with the exception of a mild increase in ALT at 63, normal being 40.  He thought Plaintiff's ALT was related to her weight gain.  (*Id.* at 221-22, 260.)

In a series of progress notes dated February to October 2006, Dr. Klein diagnosed Plaintiff with depression, due to colitis, diarrhea, and stress.  He provided counseling and coordination of Plaintiff's care.  As of August 23, 2006, Plaintiff was prescribed six medications, including Asacol.  (*Id.* at 197-209.)

In October 2006, Gayle Frommelt, Ph.D., completed a psychiatric review technique form and opined that Plaintiff did not have a severe mental impairment.  After reviewing the record, Dr. Frommelt found that Plaintiff had no limitations regarding her activities of daily living.  (*Id.* at 237-49.)

In February 2007, Mario Oliveira, M.D., examined Plaintiff on referral from Dr. Klein for pain and tingling, fatigue, diarrhea, and depression.  Plaintiff's electro-myogram (EMG) and nerve conduction studies were normal.  Dr. Oliveira re-examined Plaintiff in March 2007.  A neurological examination showed no abnormalities and an MRI of Plaintiff's brain and cervical spine were both within normal limits.   (*Id.* at 275-80.)

**B.      PROCEDURAL HISTORY**

On August 22, 2006, Plaintiff filed an application for disability insurance benefits. The Social Security Administration denied Plaintiff's application, and Plaintiff filed a timely request for a hearing before an ALJ.  (*Id.* at 12, 57-61.)

1.      Administrative Hearing

On August 8, 2007, the ALJ held a hearing, at which Plaintiff testified.  With respect to her IBS, Plaintiff testified that she could no longer work because she "just couldn't control [her] bowels anymore."  She was having difficulties with bowel movements on a daily basis, two plus times a day.  As a result, since March 2005, she had not worked at all for pay.  *(Id.* at 24.)

Plaintiff explained that she had good and bad days.  On her bad days, she would use the bathroom "probably over ten" times a day for anywhere from five to twenty minutes each time.  She explained that she had been prescribed Asacol, which helped for a time, but that she stopped using it because "it was hard on [her] liver."  She added that  her condition had worsened since March 2005.  (*Id.* at 25, 26.)

Plaintiff also testified about her depression, which she said she had been fighting for over three years.  When asked by her attorney whether her symptoms of depression kept her from work, Plaintiff testified that she "couldn't think straight."  (*Id.* at 27-28.)

With respect to the period between her alleged onset date (March 1, 2005) and her date last insured (March 31, 2005), Plaintiff testified that her typical day was spent "mostly on the toilet, hoping [she] could maybe could outside and do a few things."

When asked by her attorney how often she had "bad days" during March 2005, Plaintiff replied, "All the time."  And when asked whether she thought she could work during these "bad days", Plaintiff answered, "No."  Even if she were close to a bathroom, Plaintiff thought the "bad days" would prevent her from being able to work. (*Id.* at 28-30.)

2.   Administrative Decision

On November 1, 2007, the ALJ – evaluating Plaintiff's claim in terms of the five step process called for in the regulations – issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 404.1520(a)(4).  Specifically, the ALJ found:

1.   That Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2005.

2.   At step one, that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2005 through her date last insured of March 31, 2005.

3.   That through the date last insured, Plaintiff had the following medically determinable impairments: irritable bowel syndrome and pancreatitis.

4.   At step two, that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments.

5.   That Plaintiff was not under a disability as defined in the Social Security Act, at any time from March 1, 2005, the alleged onset date, through March 31, 2005, the last insured.

(Doc. # 8 at 14-18.)  In his step-two finding that Plaintiff lacked an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities, the ALJ evaluated Plaintiff's symptoms in light of the two-step process called for in the social security regulations.  *See* 20 C.F.R. § 404.1529.

He first found that Plaintiff's medically determinable impairments – irritable bowel syndrome and pancreatitis – could have been reasonably expected to produce the alleged symptoms.  At step two, however, he found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were not entirely credible.  (Doc. # 8 at 16.)

The ALJ contrasted Plaintiff's subjective complaints with her treatment records. With respect to her subjective complaints, Plaintiff complained that during March 2005, the relevant time period, she suffered from constant diarrhea and was severely fatigued. The ALJ noted, however, that Plaintiff had been diagnosed with colitis in October 2004 but did not allege disability until March 1, 2005.  (*Id.* at 17.)

With respect to the medical evidence, the ALJ observed that during a February 2005 exam, Plaintiff was noted by Dr. Johnson as appearing healthy and having an appropriate and pleasant affect.  And on April 14, 2005, two weeks after she underwent surgery to remove her gall-bladder, Plaintiff was noted by Dr. McCann as recovering well with no signs of complication.  The ALJ also noted that Dr. McCann released Plaintiff to a regular diet and allowed to resume all normal activity.  (*Id.*)

The ALJ also described Plaintiff's apparent improvement.  On April 21, 2005, Plaintiff was reported by Dr. Ruzkowski as feeling extremely well since her surgery. She was gaining weight and had no abdominal pain.  In addition, Dr. Ruzkowski noted that Plaintiff's diarrhea was essentially well controlled with the use of Asacol.  *(Id.)*

With respect to her alleged mental impairment, the ALJ observed that – although Plaintiff indicated disability due to depression and stress – the record contained no mental health diagnosis from a formal mental health practitioner and no evidence, during the relevant time frame, of Plaintiff seeking or receiving any formal mental health care.  Based on the notes of Plaintiff's treating physicians, the ALJ concluded that Plaintiff's mental health issues were due more to situational problems than any underlying mental illness.  (*Id.*)

3.      Plaintiff's Appeal

In October 2008, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final administrative decision for purposes of judicial review.  (*Id.* at 1-3.)  In December 2008, Plaintiff filed a complaint challenging the Commissioner's denial of disability benefits.  (Doc. # 3.)  After the parties filed their respective briefs, the Court heard oral argument on August 21, 2009.

**III.  ANALYSIS**

**A.      STANDARD OF REVIEW**

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  It requires more than a scintilla, but less than a

preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

"Evidence is not substantial if it is overwhelmed by other evidence in the record."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the

Court may neither reweigh the evidence nor substitute its judgment for that of the

agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## B.     EVALUATION OF DISABILITY

The qualifications for disability insurance benefits under the Social Security Act

are that the claimant meets the insured status requirements, is less than sixty-five years

of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step process to determine whether a

claimant qualifies for disability-insurance benefits.  *See* 20 C.F.R. § 404.1520; *Williams*

*v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  That process requires the adjudicator

to consider whether a disability claimant: (1) engaged in substantial gainful activity

during the alleged period of disability; (2) had a severe impairment; (3) had a condition

which met or equaled the severity of a listed impairment; (4) could return to her past

relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20

C.F.R. § 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of proof through

steps one to four; the Social Security Administration has the burden of proof at step five.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  If a decision regarding the

claimant's disability can be reached at any step in the process, further evaluation is

unnecessary.  *Williams*, 844 F.2d at 750.

## C.   DISABILITY DETERMINATION

Plaintiff alleges the ALJ committed legal error at step two by failing to assess

Plaintiff's major depression and IBS as "severe" impairments and by failing to properly

evaluate the opinions of Plaintiff's treating physicians.[1]

    1.   <u>Did the ALJ err by failing to properly evaluate the opinions of Plaintiff's treating physicians?</u>

An ALJ is generally bound to give greater weight to the opinions of medical

sources who have treated a claimant versus non-medical sources or medical sources

who have not treated a claimant.  *See* 20 C.F.R. § 404.1527(d)(2); *Langley v. Barnhart*,

---

[1]  "Treating source" means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  20 C.F.R. § 404.1502

373 F.3d 1116, 1119 (10th Cir. 2004).  However, if an ALJ finds that a treating source

opinion is not supported by medically acceptable clinical and laboratory diagnostic

techniques, or is inconsistent with other evidence in the record, the ALJ may decline to

give the treating opinion controlling weight.  *See Watkins v. Barnhart*, 350 F.3d 1297,

1300 (10th Cir. 2003); Soc. Sec. R. 96-2p 1996 WL 374188.  But "[e]ven if a treating

physician's opinion is not entitled to controlling weight, treating source medical opinions

are still entitled to deference and must be weighed using all of the factors provided in 20

C.F.R. §§ 404.1527 and 416.927." [2] *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th

Cir. 2004) (internal citation and quotation marks omitted).  "After considering the

pertinent factors, the ALJ must give good reasons in the notice of determination or

decision for the weight he ultimately assigns the opinion.  Finally, if the ALJ rejects

the opinion completely, he must then give specific, legitimate reasons for doing so."

*Wade v. Astrue*, 268 Fed. Appx. 704, 705 (10th Cir. Jan. 23, 2008) (unpublished)

(citing *Watkins*, 350 F.3d at 1301).

The Court addressed the ALJ's alleged error applying the "treating physician

rule" at oral argument, during which Plaintiff's counsel conceded that the record

---

[2]  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

contained no opinions by a treating source indicating Plaintiff was disabled.  Counsel sought to diminish this concession by arguing that the question of "disability" was premature, the relevant inquiry being whether Plaintiff satisfied her "de minimis" burden showing her impairments were "severe."

That argument suggests the two inquiries – whether an impairment is severe and whether a claimant is disabled – are separate and distinct.  The two inquiries, however, are inseparable.  If an ALJ finds at step two – as was found here – that the claimant does not suffer from a "severe" impairment, then the claimant is not "disabled" under the Act and the ALJ can disregard the balance of the sequential evaluation process.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("If a determination can be made at any of the steps that a claimant is or is not *disabled*, evaluation under a subsequent step is not necessary.") (emphasis added).

In evaluating whether Plaintiff's conditions were "severe", during which the ALJ necessarily relied on the medical evidence including the treating source opinions, the ALJ did not explicitly state what weight, if any, he gave the treating source opinions. (Doc. # 8 at 17.)  He did this despite the law's refrain that "the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Watkins*, 350 F. 3d at 1300 (citation and quotation marks omitted).

Despite the ALJ's omission, the Court finds the ALJ's decision sufficiently specific to allow it to conclude that the ALJ gave the treating source opinions controlling weight.

12

Moreover, the ALJ's decision is consistent with *all* the medical sources, treating and non-treating alike.  (*See* Doc. # 8 at 16-17.)

> a)     *Opinion Evidence - Plaintiff's Depression*

With respect to Plaintiff's depression, the ALJ concurred with the State agency physician, Dr. Frommelt, a non-examining source, who opined that Plaintiff did not have a "severe" mental impairment.[3]  (*Id.* at 237.)  The record, including the opinion of a treating source, supports this finding,

For instance, although Dr. Klein, a treating source, treated Plaintiff for Major Depressive Disorder in February and March of 2006, only a couple months later, in May 2006, Dr Klein found that Plaintiff had improved.  He reported that Plaintiff was calmer, more assertive, and insightful.  Plaintiff told Dr. Klein that she was now "able to handle things better."  Dr. Klein reported that Plaintiff's anti-depressant was working well and that he would continue to treat her with the same dosage.  (*Id.* at 208, 197, 202, 204.)

A year later, in February and March 2007, Plaintiff was examined by Dr. Oliveira, a neurologist and, under the regulations, a "non-treating source."[4]  Dr. Oliveira conducted a battery of tests on Plaintiff, including an MRI of Plaintiff's brain and cervical spine, an EMG, and a nerve conduction study.  All were normal.  Dr. Oliveira

---

[3] "Non-examining source" means a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . it includes State agency medical and psychological consultants, other program physicians and psychologists, and medical experts or psychological experts we consult.  20 C.F.R. § 404.1502.

[4] "Non-treating source" means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you.  20 C.F.R. § 404.1502.

recommended that Plaintiff increase her activity and begin a weight-reduction program. (*Id.* at 275-79.)

Dr. Oliveira's conclusions and recommendations were later echoed by Dr. Klein, who, in March 2007, opined that Plaintiff's depression was stable and that Plaintiff needed exercise.  Dr. Klein also added that Plaintiff's home life was fairly stable, a comment indicating the situational anxiety the ALJ noted in his opinion.  (*Id.* at 280.)

Thus, the record reflects that the ALJ's decision was in accord with all of the opinion evidence, regardless of its origin, which suggested that Plaintiff's depressive issues related more to situational problems – the adoption of a child, a terminally ill brother-in-law, her twin sister's health problems – rather than any underlying mental illness.

b)      *Opinion Evidence - Plaintiff's Irritable Bowel Syndrome*

The ALJ's decision is also consistent with the treating source opinions regarding Plaintiff's abdominal problems.  For instance, in February 2005, Dr. Johnson, one of Plaintiff's primary care physicians, assessed Plaintiff with functional colitis and prescribed, among other medications, Asacol.  (*Id.* at 129-30.)  Plaintiff underwent surgery in the first week of April of 2005, and on April 14, Dr. McCann – the surgeon who removed her gall-bladder – noted that Plaintiff was recovering well and had no signs of complication.  (*Id.* at 223.)  Dr. McCann released Plaintiff to a regular diet and allowed to resume all normal activity.  (*Id.*)  A week later, on April 21, 2005, Dr. Ruzkowski – who diagnosed Plaintiff with pancreatitis and performed an ERCP on

14

her – noted that Plaintiff was doing extremely well since her surgery and had no

abdominal pain.  He added that Plaintiff's diarrhea was well-controlled with the use of

Asacol.  (*Id.* at 262.)  On May 5, 2005, Dr. Klein noted that Plaintiff was doing much

better since her surgery and that her diarrhea "was all gone now."  (*Id.* at 212.)  Finally,

in a treatment noted dated June 15, 2005, Dr. Ruzkowski reported that Plaintiff's

diarrhea was well-controlled.  (*Id.* at 221, 260.)

These medical source opinions, reflecting almost five months' evaluation,

demonstrate a marked improvement in Plaintiff's abdominal problems.  These opinions

are thus consistent with the ALJ's opinion that Plaintiff's IBS and pancreatitis were not

severe impairments.

The above-chronology, from February to June 2005, also highlights a

fundamental flaw in Plaintiff's claim: her IBS, which the ALJ found was a medically

determinable impairment, did not affect Plaintiff for 12 consecutive months, as an

impairment must before a claimant can qualify for benefits.  *See Barnhart v. Walton*,

535 U.S. 212, 218 (2002) ("the statute . . . specifies that the impairment must last 12

months . . .") (internal quotation marks omitted).  The duration of a given impairment, as

shown below, is part of the larger question asking whether an impairment is "severe" at

step two.

2.   Did the ALJ err by failing to assess Plaintiff's Major Depression and
     Irritable Bowel Syndrome as Severe Impairments?

"At step two, the claimant must show that [she] has a medically severe impair-

ment or combination of impairments."  *Lax*, 489 F.3d at 1084 (internal citation and

quotation marks omitted).  An impairment or combination of impairments is "severe"

within the meaning of the regulations if it significantly limits an individual's ability to

perform basic work activities.  Basic work activities are:

> abilities and aptitudes necessary to do most jobs, including walking,
> standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
> seeing, hearing, and speaking; understanding, carrying out, and
> remembering simple instructions; use of judgement, responding
> appropriately to supervision, coworkers, and usual work situations;
> and dealing with changes in a routine work setting.

*Langley*, 373 F.3d at 1123 (citations and quotation marks omitted).

An impairment or combination is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would

have no more than a minimal effect on an individual's ability to work.[5]  "[W]hile the

showing a claimant must make at step two is de minimis, a showing of the mere

presence of a condition is not sufficient."  *Cowan v. Astrue*, 552 F.3d 1182, 1186

(10th Cir. 2008) (citing *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)).

a) *Step Two – Plaintiff's Depression*

With respect to Plaintiff's depression – and as the ALJ explained – although

Plaintiff indicated disability due to depression and stress, the record contained no formal

mental health diagnosis from a formal mental health practitioner *during the relevant time

frame*.  (*See* Doc # 8 at 17.)  Dr. Klein did diagnose Plaintiff with major depression in

---

[5] *See* 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p.

16

March and May of 2006, but this happened a year after the relevant period of March 2005.  (*Id.* at 204, 206, 209, 197.)

Plaintiff points to various portions in the record indicating that she was depressed before March 31, 2005, her date last insured.  (Doc. # 14 at 5.)  For instance, in September 2004, Dr. Johnson noted that Plaintiff suffered diarrhea in the morning while going through the process of adopting a child.  Dr. Johnson also observed that Plaintiff had been under a lot of stress and that "[Plaintiff] is generally healthy with no history of major medical problems."  (Doc. # 8 at 136.)  A few months later, on February 17, 2005, Dr. Johnson diagnosed Plaintiff with Anxiety Acute Stress Reaction.  (*Id.* at 128-30.)  Dr. Johnson, however, also noted that "[Plaintiff's] stress level is always high", citing her personal problems, and that Plaintiff appeared healthy and had a pleasant affect.  (*Id.* at 129.)

Based on this evidence, the ALJ concluded that Plaintiff's depression was not a medically determinable impairment, a conclusion that this Court, if it were allowed to reweigh the evidence, may not reach.  The Court's role, however, is limited to reviewing "the *sufficiency* of the evidence, not its weight[.]"  *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  Thus, "[a]lthough the evidence may also have supported contrary findings, [the Court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.* (citation and internal quotation marks omitted).

17

Given this standard of review, the Court must affirm, because the ALJ's determination that Plaintiff's depression was not "severe" is supported by more than a mere scintilla of evidence, though perhaps less than a preponderance. *See Lax*, 489 F.3d at 1084. The burden at step two, it must be stressed, is on the Plaintiff, not the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 ("The claimant . . . must bear the burden . . . at step two that he has a medically severe impairment or combination of impairments[.]") Plaintiff failed to meet her burden.

In sum, although there is evidence in the record supporting Plaintiff's contention that her depression was a medically severe impairment *during* March 2005, there is also substantial evidence suggesting that it was due to situational stressors. Thus, the ALJ's finding that Plaintiff's depression was not a severe impairment was supported by substantial evidence in the record.

> b)    *Step Two – Plaintiff's Irritable Bowel Syndrome*

With respect to Plaintiff's IBS, it is undisputed that Plaintiff has had a history of abdominal problems. However, as explained by the Tenth Circuit, although the standard for finding a given impairment "severe " is *de minimis*, mere presence of the impairment is insufficient. C*owan*, 552 F.3d at 1186. Plaintiff ignores this caveat, instead equating the presence of IBS with its rating as "severe."

As shown below, there exists substantial evidence to support the ALJ's conclusion that Plaintiff's IBS was not a severe impairment. For example, although Dr. Hor assessed Plaintiff's colon biopsy as consistent with microscopic colitis in

October 2004, Plaintiff did not allege disability until March 1, 2005.  (*Id.* at 125, 132).

This gap in time between the diagnosis of colitis and the allegation of disability suggests

that Plaintiff's IBS was no more than a slight abnormality.  In addition, on April 14, 2005,

two weeks after she had her gall-bladder removed, Plaintiff reported to Dr. McCann that

she felt much better and had no diarrhea.  (*Id.* at 223.)  A week later, Dr. Ruzkowski

noted that Plaintiff's IBS was well-controlled by Asacol.  (*Id.* at 262.)  And on May 5,

2005, Plaintiff reported that she was much better after surgery, having had no more

bouts of diarrhea.  (*Id.* at 212.)  Consistent with the foregoing, in June 2005,

Dr. Ruzkowski again remarked that Plaintiff's diarrhea was well-controlled.  (*Id.* at 221,

260.)  This evidence also demonstrates that however impaired Plaintiff was because

of her IBS, it was not an impairment that lasted for 12 consecutive months.

In sum, there exists substantial evidence to support the ALJ's conclusion that

Plaintiff did not satisfy her burden at step two of the evaluation process showing that

she suffered from a "severe" impairment or impairments.

## IV.  CONCLUSION

The ALJ's denial of Plaintiff's applications for disability benefits is supported

by substantial evidence in the record and free of legal error.  Accordingly, the

Commissioner's decision is AFFIRMED.

DATED:  November __18__, 2009

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge